IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MELISSA KAMINSKI, MIKAYLA KAMINSKI, and
JORDAN KAMINSKI, a minor, by her guardian and
parent, Melissa Kaminski,

                     Plaintiffs,                OPINION and ORDER

   v.                                          24-cv-270-jdp

BLUEGREEN VACATIONS UNLIMITED, INC.,

                     Defendant.

---

This case arises from 13-year-old Jake Kaminski's death from a ski accident at the Christmas Mountain Village resort in March 2023. Melissa Kaminski, who is Jake's mother, and his sisters Mikayla and Jordan bring claims against the owner of Christmas Mountain, BlueGreen Vacations Unlimited, Inc. The Kaminskis contend that Jake's death was caused by Christmas Mountain's negligence in failing to properly mark and pad an electrical box near the site of Jake's accident. The Kaminskis also bring claims for negligent infliction of emotional distress based on their distress at learning of Jake's death.

Three motions are before the court. Christmas Mountain moves for summary judgment on the Kaminskis' claims for negligent infliction of emotional distress. Dkt. 21.[1] Christmas Mountain also moves to strike the opinions and testimony of the Kaminskis' liability expert. Dkt. 50. The Kaminskis move for leave to amend their complaint to add several new claims based on the same underlying events. Dkt. 30.

---

[1] The Kaminskis moved for leave to file a sur-reply with the proposed sur-reply attached. Dkt. 60. The court will grant the motion and consider the sur-reply.

For the reasons explained below, the court will deny the Kaminskis' motion for leave to amend their complaint, grant in part Christmas Mountain's motion to strike the opinions of the Kaminskis' expert, and grant Christmas Mountain's motion for summary judgment on the Kaminskis' negligent infliction of emotional distress claims. This case will proceed to trial on the Kaminskis' wrongful death claim.

## UNDIPSUTED FACTS

The following facts are undisputed except where noted.

On March 5, 2023, plaintiff Melissa Kaminski was on a ski trip with her daughters Mikayla and Jordan and her son Jake at the Christmas Mountain Village resort in the Wisconsin Dells. At the time, Mikayla and Jordan were in their late teens and Jake was 13 years old. The whole family spent the morning skiing, but in the afternoon, Melissa took Jordan to a nearby water park while Mikayla and Jake continued skiing.

At about 3:30 p.m., Mikayla and Jake skied down the Chute ski run. Part way down the run, Jake veered to the left, collided with a tree, and was fatally injured. There was an unpadded grey electrical box near the tree that Jake struck. The parties dispute whether Jake struck the electrical box before hitting the tree.

Jake had no pulse and was not breathing after the collision. Bystanders with medical training provided first aid. They were quickly joined by ski patrol with first-aid equipment. Paramedics and law enforcement arrived a short time later. Efforts at resuscitation continued as first responders brought Jake's body down to the ambulance in the parking lot. But those efforts were unsuccessful, and Jake was declared dead at the scene.

Meanwhile, Mikayla was waiting for Jake at the bottom of the run. She heard on an employee's radio that a 13-year-old boy had been injured on the run. Shortly after that, a Christmas Mountain employee confirmed that Mikayla was Jake's sister and took her to the ski patrol hut. Mikayla called Melissa to tell her that Jake had been in a serious accident and that she should return to Christmas Mountain. The exact timing is disputed, but Melissa and Jordan arrived as first responders were transporting Jake down the mountain. After the emergency medical providers determined that they could not revive Jake, they informed Melissa of his death and allowed her to remain with his body in the ambulance.

The Kaminskis are citizens of Illinois. Dkt. 72. The owner of Christmas Mountain Village, BlueGreen Vacations Unlimited, Inc., is incorporated under the laws of the State of Florida and its principal place of business is in Florida. The Kaminskis seek more than $75,000.00 in damages. Because the parties have diverse citizenship and the amount in controversy is greater than $75,000, the court has jurisdiction under 28 U.S.C. § 1332.

The court will discuss additional facts as they become relevant to the analysis.

ANALYSIS

The court begins with the Kaminski's motion for leave to amend their complaint, then turns to Christmas Mountain's motion to strike the Kaminskis' liability expert. Finally, the court will address Christmas Mountain's motion for summary judgment.

**A. Motion for leave to amend complaint**

The Kaminskis seek leave to amend their complaint to add the following claims: (1) three new counts of wrongful death claims based on different legal theories related to the alleged violations of the Wisconsin Alpine Sport Statute, Wis. Stat. § 167.33, (2) four new

3

counts of survival action claims brought on behalf of Jake's estate for pain and suffering Jake experienced before his death, and (3) new allegations that Christmas Mountain Village failed to comply with the Wisconsin Alpine Sport Statute by failing to adopt and implement an adequate padding policy for man-made structures.

Under Federal Rule of Civil Procedure 15(a)(2), a court should "freely give leave when justice so requires." A court may deny leave to amend when there is a good reason to do so, including futility, undue delay, prejudice, or bad faith. *White v. Woods*, 48 F.4th 853, 860 (7th Cir. 2022). Christmas Mountain Village contends that the new claims are untimely because the Kaminskis could have included them in their original complaint. It also contends that it would be prejudiced by the late addition of these claims because the case schedule would need to be modified to allow discovery concerning the new survivorship claims and new motions for summary judgment on the new wrongful death claims.

The court agrees that the proposed amended complaint is untimely under the court's scheduling order. The Kaminskis filed their complaint on April 24, 2024, more than 13 months after Jake's death. The June 24, 2024, scheduling order set August 22, 2024, as the deadline for the parties to amend their pleadings without the court's leave and cautioned the parties that "the later a party seeks leave of the court to amend, the less likely it is that justice will require the amendment." Dkt. 14. The Kaminskis moved to amend their complaint February 13, 2025, nine days after Christmas Mountain moved for summary judgment.[2] There are no

---

[2] Christmas Mountain moved for summary judgment about two and one-half months before the April 24, 2025, deadline for dispositive motions, as it was entitled to do. If Christmas Mountain's motion for summary judgment had been filed early in the discovery period, the court would discount claims of prejudice arising from an amendment to the complaint. But by the time Christmas Mountain moved for summary judgment, discovery had been open for nearly nine months. In this case, that was ample time to develop all the necessary fact discovery.

4

substantive changes to the "Factual Allegations" section in the proposed amended complaint, so it appears that the new claims are all based on the same underlying events asserted in the original complaint.

The Kaminskis contend that the proposed amendments are not untimely because they are based on information learned from depositions of Christmas Mountain employees that took place in mid-January 2025, and that Christmas Mountain will not be prejudiced by amendments that do nothing more than conform the claims to the evidence that has been revealed in discovery.

The court will address the three categories of proposed amendments separately.

1. **New wrongful death counts**

The Kaminskis' original complaint alleges that Christmas Mountain is liable for negligently causing Jake's death under Wisconsin's Wrongful Death Act, Wis. Stat. § 895.03. Specifically, the Kaminskis' original complaint alleges that Christmas Mountain failed to comply with its duties under Wisconsin's Alpine Sports Statute, § 167.33, Dkt. 1. The Kaminskis seek to add three new counts under the Wrongful Death Act based on the legal theory that Christmas Mountain's conduct was negligence per se, a willful and wanton violation of the Wisconsin's Alpine Safety Statute, or was itself willful and wanton conduct.

The allegations for each of these counts are nearly identical to the existing wrongful death claim. The primary difference between the Kaminskis' original claim for wrongful death based on negligence and the new counts is the assertion that Christmas Mountain's conduct was willful and wanton. The Kaminskis contend that their new allegations concerning willful and wanton conduct are based on the depositions of Christmas Mountain employees in which they testified that Christmas Mountain "knew that skiers went down the Cut-Through area"

5

and "knew the subject metal electrical box was supposed to be marked/padded" but "admittedly failed to pad or mark the subject electrical box." Dkt. 63, at 5. But the Kaminski's original complaint alleges that Christmas Mountain knew "that skiers regularly skied on or in" the Cut-Through and that it failed to mark or pad the electrical box, despite knowing that it should have been marked or padded. Dkt. 1, ¶¶ 30h–j. The new counts merely add new legal theories, not new factual allegations.

Federal pleading rules do not require plaintiffs to set out their legal theories. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). Because the Kaminskis' original complaint set out the factual allegations underlying all their proposed wrongful death claims, it is unnecessary to add new counts to their complaint simply to identify each of their legal theories. The court will deny the Kaminskis' request to amend their complaint to add new legal theories. But the Kaminskis may pursue these new theories because the underlying facts are fairly asserted in the original complaint

**2. Survival action on behalf of Jake's estate**

The Kaminskis seek to add Jake's estate as a plaintiff and to bring four counts of survival action for the pain and suffering that Jake experienced before his death, based on the same four legal theories underlying their wrongful death claims. The Kaminskis contend that these additional claims are timely because they learned in a deposition in January that "Jake may have been alive for a period after striking the tree." Dkt. 63, at 5–6. To support this contention, the Kaminskis cite an employee's statement that when he was at the accident scene that it sounded like Jake's body was "gasping for air." Dkt. 44 (B. Honer Dep. 41:2–4).

The employee's statement alone would not establish that Jake was alive after striking the tree. That Jake sounded like he was gasping for air while a machine was giving Jake CPR

6

and "moving his whole body" does not mean that he was alive or conscious after striking the tree. *Id.* (39:2–5, 40:24–41:1). In the absence of any eyewitness testimony that Jake was conscious or responsive after he hit the tree, the Kaminskis would need to offer expert opinions about the nature of his injuries and how the impact would have affected his brain. The Kaminskis have not disclosed an expert on this issue, and the time for them to do so has long since passed.

The decedent's own potential suffering, and the potential for a claim based on it, should be apparent at the outset of any wrongful death case. But the Kaminskis did not diligently pursue such a claim. As the court explained when setting the schedule in this case, "[p]arties are to undertake discovery in a manner that allows them to make or respond to dispositive motions within the scheduled deadlines. The fact that the general discovery deadline cutoff, set forth below, occurs after the deadlines for filing and briefing dispositive motions is not a ground for requesting an extension of the motion and briefing deadlines." Dkt. 14, at 3. The Kaminskis' proposed addition of Jake's estate as a plaintiff and survival actions by the estate would require significant additional discovery.

Christmas Mountain would be unfairly prejudiced by the addition of a new party and new claims this late in the case. The court will deny the Kaminskis' motion for leave to amend their complaint to add claims by Jake's estate.

### 3. New allegations concerning Christmas Mountain's padding policy

The Kaminskis seek to add allegations that Christmas Mountain failed to adopt and enforce a padding policy in compliance with the Alpine Safety Statute, Wis. Stat. § 167.33(4)(ar). They contend that their motion to add this allegation is timely because it is

7

based on the depositions of Christmas Mountain employees that took place in mid-January 2025. Dkt. 63, at 5.

The Kaminskis' original complaint alleged that the electrical box was not marked or padded at the time of Jake's death and that Christmas Mountain failed to comply with other duties and obligations imposed by the Alpine Safety Statute. Christmas Mountain concedes that the Alpine Safety Statute required Christmas Mountain to mark the electrical box and that the electrical box was not marked or padded at the time of Jake's death. Dkt. 59, ¶¶ 74–76. Christmas Mountain's defense is that there is no evidence to show that Jake struck the electrical box, and therefore the failure to mark or pad the electrical box did not cause his death.

The amended complaint adds more detail to the Kaminskis' allegations about how Christmas Mountain failed to comply with the requirements of the Alpine Safety Statute. But it's not necessary to add all the details that have emerged in discovery into the complaint. The Kaminskis have adequately alleged that Christmas Mountain failed to mark and pad the electrical box. The additional details concerning the Christmas Mountain's padding policy may be presented at trial without amending the complaint. So to with the allegation that Christmas Mountain's failure was willful or wanton. The Kaminskis may attempt to persuade the jury that Christmas Mountain's conduct was willful or wanton based on the evidence that has so far been developed.

The court will deny the motion for leave to add the padding policy allegations to the complaint, although the Kaminskis may present that evidence at trial.

**B. Motion to exclude opinions and testimony of Larry Heywood**

The Kaminskis retained snow and ski safety consultant Larry Heywood as a liability expert to offer opinions about the cause of Jake's accident. Dkt. 52-2. Heywood previously

8

worked in the ski industry as a ski patroller, director of ski patrol, and then director of mountain operations at a ski resort in California and now works as a consultant on operational and safety issues in the winter recreation industry. Dkt. 52-1. Heywood opines that (1) Jake had the skiing skills to ski on the run he was on, including the cross-through trail, (2) Christmas Mountain breached its duties as a ski operator by failing to pad or mark the electrical box, and (3) Jake's death was caused by the failure to mark or pad the electrical box because he hit the electrical box before hitting the tree.

Christmas Mountain moves to exclude Heywood from offering any opinion or testimony in this matter, but the arguments in its motion address only Heywood's opinions about the cause of Jake's death. Christmas Mountain contends that Heywood is not qualified to offer opinions on the cause of Jake's injury and that his opinions are not the result of a reliable method applied to the facts of this case. Specifically, Christmas Mountain contends that Heywood's opinion about the cause of Jake's death is speculative and not based on either a scientific methodology or Heywood's specialized experience in the winter recreation industry.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993) and *Kumho Tire Company, Ltd., v. Carmichael*, 526 U.S. 137, 147 (1999), the court must ensure that proffered expert testimony meets the requirements of Rule 702. For testimony to be admissible under Rule 702, the individual proffering the testimony must be qualified as an expert, the expert's opinions must be based on reliable methods, and those methods must be reliably applied to the facts of the case.

Heywood's experience working in the winter recreation industry qualifies him to offer opinions about what conditions create safety hazards on a ski slope and the duty that Christmas Mountain owed to those skiing on the mountain. But nothing in Heywood's report

9

or work history shows that he has any training, special knowledge, or experience on which he based his opinion that Jake hit the electrical box before hitting the tree. To write his report, Heywood reviewed photographs of the scene and Jake's skis, video of Jake skating, witness statements, and Christman Mountain's discovery responses. Heywood's assertion that Jake hit the electrical box is based on two pieces of evidence from those materials: a statement from a bystander who did not see the crash but heard a metallic bang before seeing Jake lying on the ground and a dent in one of Jake's skis. Heywood did not analyze the scene or electrical box in person and his report does not contain any analysis of photographs of the electric box itself.[3]

Heywood's analysis of these two pieces of evidence applies nothing more than common sense to speculate that the metallic bang the bystander heard was Jake's ski hitting the electrical box and that the dent in his ski must have been caused by the electrical box because that "type of damage only occurs when ski edges strike very hard materials like a rock or metal." Dkt. 52-2, at 7. Heywood does not have any training or experience in accident reconstruction or materials science, and he did not consider whether any other hard objects on the mountain could have caused the dent or the metallic sound. An opinion based on nothing more than common sense that would be obvious to a layperson does not assist the trier of fact in understanding the evidence or determining a fact in issue. *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001); *see also Myers v. Illinois Central R. Co.*, 629 F.3d 639, 644–45

---

[3] Heywood did provide more detailed analysis of the electric box in both his deposition and in a declaration in support of the Kaminskis' opposition to Christmas Mountain's motion for summary judgment. But parties may not supplement a deficient expert disclosure through deposition testimony, *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 641–42 (7th Cir. 2008), and the Kaminskis did not seek leave to supplement his expert report. So the court does not consider Heywood's subsequent testimony in considering whether his opinions meet the requirements of Rule 702.

(7th Cir. 2010) (affirming exclusion of testimony of expert who did not rule out other causes or apply any method other than "common sense").

The court will grant Christmas Mountain's motion to exclude testimony from Heywood concerning causation. But the argument in Christmas Mountain's motion does not justify its request that the court preclude Heywood from offering any testimony at all. Heywood may not testify that Jake struck the electric box before hitting the tree, but he may offer testimony consistent with his report on the other topics.

## C. Motion for summary judgment

Christmas Mountain originally moved for summary judgment on all the Kaminski's claims based on Wisconsin's Alpine Immunity Statute, Wis. Stat. §§167.33 and 895.526 as well as for summary judgment on all negligent infliction of emotional distress claims. But after summary judgment briefing was complete, Christmas Mountain informed the court that "the defendants no longer believe that a reasonable basis exists for summary judgment based on the immunity defense which we have briefed in our summary judgment motion," and that Christmas Mountain was "withdrawing those portions of [its] brief and motion which address those defenses." Dkt. 69.

Based on Christmas Mountain's withdrawal of its motion based on the Alpine Immunity Statute, the court will deny Christmas Mountain's motion for summary judgment on the Kaminskis' wrongful death claim.[4] That leaves Christmas Mountain's motion for summary judgment on the negligent infliction of emotional distress claims.

---

[4] In its reply brief, Christmas Mountain shifts ground, arguing that the Kaminskis failed to offer evidence from which a reasonable jury could conclude that conduct by Christmas Mountain caused Jake's death based on its contention that Heywood's causation testimony should be excluded. But arguments raised for the first time in a reply brief are forfeited. *Adams*

11

Summary judgment is appropriate only if there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party, here the Kaminskis. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is genuinely disputed only if both sides have evidence that would support a reasonable jury finding in their favor. In other words, the Kaminskis must adduce evidence that, with the record taken as a whole, could support a reasonable jury verdict in their favor. *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 970 (7th Cir. 2004) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

A plaintiff seeking to recover for emotional distress must prove the following three elements: (1) the defendant's conduct fell below the applicable standard of care; (2) the plaintiff suffered "severe" emotional distress; and (3) the defendant's conduct was a cause-in-fact of the plaintiff's injury. *Terry v. J. Broad. Corp.*, 2013 WI App 130, ¶ 38, 351 Wis. 2d 479, 514, 840 N.W.2d 255, 271. "The tort of negligent infliction of emotional distress is not designed to compensate all emotional traumas of everyday life," and Wisconsin law requires courts to determine whether public policy considerations preclude liability for negligent infliction of emotional distress. *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 659, 517 N.W.2d 432, 445 (1994).

The Wisconsin Supreme Court discussed these considerations at length in *Bowen*. The court held that a bystander plaintiff who alleges emotional distress arising from a tortfeasor defendant's negligent infliction of physical harm on a third person victim must satisfy the

---

*v. Bd. of Educ. of Harvey Sch. Dist. 152*, 968 F.3d 713, 716 (7th Cir. 2020).

following three factors to succeed on her claim: (1) the victim's injury must be fatal or very severe; (2) the plaintiff must be the spouse, parent, child, grandparent, grandchild or sibling of the victim; and (3) the plaintiff must have witnessed the injury-causing event or the "gruesome aftermath of such an event minutes after it occurs." *Id.* at 656–58. A plaintiff who learns of a family member's death through indirect means may not recover for negligent infliction of emotional distress. *Id.* at 659. In *Bowen*, the plaintiff met all three factors because she arrived on the scene minutes after her 14-year-old son was fatally hit by a car while riding his bike. The court held that the plaintiff observed an extraordinary event because she "saw her severely injured son trapped beneath the defendant's car." *Id.* at 634–35.

Here, the Kaminskis satisfy the first two *Bowen* factors, but the parties dispute the third factor. The analysis of this factor is fact-specific and depends on what Jake's family members observed and when they observed it. The court will consider the experiences of each of the three plaintiffs.

Mikayla was at the bottom of the hill when the accident occurred. She learned that Jake had been injured when she overheard a call on a Christmas Mountain employee's radio that said a 13-year-old boy had been hurt, including that he "was not breathing" and "had no pulse." Dkt. 42, ¶ 11. Employees took Mikayla to the ski patrol hut. Mikayla called Melissa and Jordan to tell them to get back to Christmas Mountain. Then she remained in the ski hut until she was brought to the ski lodge restaurant to join her mother, Melissa. It was Melissa who confirmed for Mikayla that Jake was dead. Mikayla never saw Jake's body in the aftermath of him striking the tree.

Melissa and Jordan were not at Christmas Mountain when the accident occurred. After Mikayla called them, they immediately drove back, arriving at the Christmas Mountain parking

13

lot approximately 15 minutes after getting Mikayla's call. Dkt. 41, ¶ 9; Dkt. 43, ¶ 6. As they arrived, Melissa and Jordan saw Jake's body being brought down the mountain on a snow tractor and white sheets being put up to screen off part of the parking lot near the emergency vehicles. Dkt. 41, ¶ 10; Dkt. 43, ¶ 7. Melissa went to the blocked-off area, and a police officer informed her that emergency medical providers were working on Jake. Dkt. 41, ¶ 11. Then a medical provider who had been giving Jake first aid informed her that Jake was dead. *Id.*, ¶ 12. Paramedics allowed Melissa to view Jake's body. *Id.*, ¶ 13.

Jordan had been taken to the ski patrol hut as Melissa approached the blocked-off area, but she returned approximately 15 minutes later, so she also saw Jake's body when the sheets were lowered to show it to Melissa. Dkt. 43, Dkt. 8. Melissa shouted, "get her out of here," and Jordan was quickly taken back to the ski patrol hut without being told that Jake was dead. *Id.* A few minutes later Jordan and Mikayla were taken to meet Melissa in the ski lodge restaurant, where Melissa told them Jake was dead. *Id.*, ¶ 9.

The court concludes that the third *Bowen* factor requiring the plaintiff to have witnessed the injury or its "gruesome aftermath" is not met. None of the Kaminskis witnessed Jake hit the tree or saw his body on the ski slope. The Wisconsin Supreme Court explained in *Bowen* that the shock and grief is great when a person is informed of the serious injury or death of a family member, but "it is not compensable emotional distress under" a negligent infliction of emotional distress action. *Bowen*, 183 Wis.2d at 659. Said another way, "the experience of learning of the family member's death through indirect means" is not a recoverable harm under Wisconsin law. *Id.*

In this case, Jake's mother and sisters learned of his death through indirect means. Even though Mikayla was on the ski slope when Jake's accident occurred, she learned that he had

14

life-threatening injuries over the radio. Mikayla never saw his body, so she did not witness the gruesome aftermath of Jake hitting the tree. Melissa and Jordan knew that Jake had been in a serious accident before they arrived on the scene and saw first responders bringing Jake down the mountain while attempting to resuscitate him. But seeing first responders trying to resuscitate a loved one is not an extraordinary event for which a bystander plaintiff may recover. *Id.* at 660 ("The shock of seeing efforts to save the life of an injured spouse in an ambulance or hospital, for example, will not be compensated because it is a life experience that all may expect to endure."). Melissa and Jordan did eventually see Jake's body. But this is not a case in which family members "came upon the gruesome scene minutes later" because Jake's body had been taken off the mountain and they learned that first responders had been providing care for him before seeing his body.

Because the Kaminskis did not witness Jake's accident or its gruesome aftermath minutes after he struck the tree, the court will grant Christmas Mountain's motion for summary judgment on the negligent infliction of emotional distress claims. The case will proceed to trial on the Kaminskis' wrongful death claim.

ORDER

IT IS ORDERED that:

1. Defendant Bluegreen Vacations Unlimited, Inc.'s motion for summary judgment, Dkt. 21, is GRANTED IN PART and DENIED IN PART as follows:

    a. Summary judgment is granted in favor of defendant on plaintiffs' claims for negligent infliction of emotional distress.

    b. Summary judgment is denied for plaintiffs' claim for wrongful death.

2. Plaintiffs' motion for leave to file a first amended complaint, Dkt. 30, is DENIED.

3. Defendant's motion to exclude plaintiff's expert Larry Heywood, Dkt. 50, is GRANTED in part. Heywood may offer opinions about the standard of care for a ski operator and whether defendant violated that standard of care. All other testimony from Heywood is excluded.

4. Plaintiffs' motion for leave to file a sur-reply in further opposition to defendant's motion for summary judgment, Dkt. 60, is GRANTED.

5. The case will proceed to trial on plaintiffs' wrongful death claim. The parties should review and comply with the court's rules for pretrial submissions, which are set out in the court's standard attachment for civil case. *See* Dkt. 14 (Attachment at 9).

Entered July 29, 2025.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge